C-03-CV-26-004770
E-FILED; Baltimore County Circuit Court
Docket: 10/8/2026 4:51 PM; Submission: 10/8/2026 4:51 PM
Envelope: 28632044

# EXHIBIT 6

Ellen R. Boyd
MITCHELL SANDLER PLLC
2020 K Street NW, Suite 760
Washington, D.C. 20006
202.886.5260
eboyd@mitchellsandler.com

***Attorneys for Plaintiff***
***West Capital Lending, Inc.***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WEST CAPITAL LENDING, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>LOANDEPOT.COM, LLC,<br><br>Defendant. | Civil Action No.<br><br>**DECLARATION OF SHAWN WAY** |

I, Shawn Way, am over the age of 18 and competent to testify to the following, all of which are within my personal knowledge:

1. I worked for loanDepot from December of 2012 to January of 2023. I was a loan originator from 2012 until 2018, at which time I became a production manager. In 2022, I became an ECR Manager, although I do not know if my job title officially changed.

2. As a production manager I oversaw a team of approximately 20 loan originators. I was responsible for driving sales by coaching the team, encouraging them and providing sales

training. I also would act as a second-level loan officer on deals on the front end if a loan officer could not get a borrower to commit or on the back end if a customer wanted to pull out of a loan.

3. As a production manager I had some discretion to approve pricing concessions on my own, meaning I could reduce rates or fees to close a deal or keep a deal. loanDepot's pricing was usually higher than our competitors so when a borrower had a competitive bid, I often had to provide a pricing concession to keep the borrower, but when I did so my compensation was adversely affected.

4. As a production manager, when I provided concessions it had an adverse affect on my compensation. The more concessions I provided the less commission I would receive. I thought it was unfair because the more I gave customers better loan terms, the more I got dinged on my pay. As an ECR manager my pay was not affected at all by pricing exceptions provided to the borrower.

5. loanDepot encouraged the belief that the company did things the right way. We called it DTRT do the right thing. This was communicated every day. It created the belief that we did things correctly. It was constantly reinforced that loanDepot did things compliantly and in large part it was why I never questioned things I always believed that what I was doing had been cleared as legal and compliant by the company because of the way the company promoted its compliant way of doing business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Shawn Way (Mar 3, 2026 12:41:14 PST)

Shawn Way